# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | | |
|---|---|---|
| SHAROLYN STANLEY, | ) | Case No. |
| | ) | Jury Trial |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | |
| | ) | |
| UNITED AIRLINES, INC., | ) | |
| a Foreign Profit Corporation, | ) | |
| | | |
| Defendant. | | |
| _____/ | | |

## COMPLAINT OF DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND FLORIDA'S CIVIL RIGHTS ACT- DISABILITY

Plaintiff, SHAROLYN STANLEY, by and through her undersigned counsel, sues the Defendant, UNITED AIRLINES, INC., a Foreign Profit Corporation, hereinafter referred to as "Defendant" or "UNITED," and states as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 1367, and Title 111 of the Americans with Disability Act of 1990 (hereinafter "ADA"), 42 U.S.C. § 12101, *et seq.*

1

2.     Venue lies within United States District Court for the Middle District of Florida, Orlando Division because a substantial part of the events or omissions  giving rise to this claim occurred in the Middle District of Florida and is therefore proper pursuant to 28 U.S.C. 1391(b).

**PARTIES**

3.     Plaintiff, SHAROLYN STANLEY, is a resident of Celebration, Osceola County, Florida.

4.     Defendant, UNITED, is a Foreign Profit Corporation, authorized to conduct business in the State of Florida.

5.     Plaintiff, SHAROLYN STANLEY, worked for Defendant as a Flight Attendant (FA) from approximately October 2018 through October 2022. She started working with Continental Airlines in 1994, and Continental Airlines merged with Defendant in 2012, and the FA group merged with Defendant in October 2018. During SHAROLYN STANLEY'S tenure at UNITED her job performance was excellent. Despite SHAROLYN STANLEY'S many achievements, Defendant discriminated against her and denied her request for reasonable accommodation for her asthma disability. As a result, SHAROLYN STANLEY has suffered significant damage.

The Defendant is an employer as defined by the laws under which this action is brought and employs the required number of employees.

## ADMINISTRATIVE PREREQUISITES

6.    All conditions precedent to bringing this action have occurred.

7.    Plaintiff, SHAROLYN STANLEY, timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on or about May 18, 2021.

8.    More than 60 days have passed since the filing of her charge.

9.    On or around October 27, 2022, the EEOC issued SHAROLYN STANLEY a Right to Sue Notice.  This Complaint has been filed within 90 days of receipt of the Right to Sue Notice.

## GENERAL ALLEGATIONS

10.    At all times material herein, Defendant acted with malice and reckless disregard for SHAROLYN STANLEY'S federally protected rights.

11.     At all times material herein, SHAROLYN STANLEY was qualified to perform her job duties within the legitimate expectations of her employer, the Defendant.

12.     Plaintiff, SHAROLYN STANLEY, has been required to retain the undersigned counsel to represent her in this action and is obligated to pay counsel a reasonable fee for the legal services.

## FACTUAL ALLEGATIONS

13.     Plaintiff, SHAROLYN STANLEY, began working for Defendant in October 2018 as a Flight Attendant.  She started working with Continental Airlines in 1994, and Continental Airlines merged with Defendant in 2012, and the Flight Attendant group merged with Defendant in October 2018.

14.     During her tenure, SHAROLYN STANLEY'S work performance met or exceeded Defendant's legitimate expectations. Reviews of SHAROLYN STANLEY'S performance were consistently excellent.

15.     Defendant recognized SHAROLY STANLEY'S accomplishments, and she was awarded raises and bonuses pursuant to the Collective Bargaining Agreement.

4

16.     On September 1, 2020, SHAROLYN STANLEY'S Doctor faxed to the Defendant the ADA Medical Verification form specifying that SHAROLYN STANLEY had been diagnosed with asthma.  She was diagnosed with asthma when she was a baby, and never outgrew it. Therefore, SHAROLYN STANLEY is a qualified individual with a disability under the Americans with Disabilities Act. As a result of SHAROLYN STANLEY'S disability, any life activities that trigger her environmentally induced asthma must be avoided.. SHAROLYN STANLEY'S doctor advised her to avoid anything that triggers her asthma. SHAROLYN STANLEY knows when her asthma is triggered because she can feel it in her lungs when they start to constrict.

17.     SHAROLYN STANLEY started her accommodation process in July 2020, and the Defendant offered a Voluntary Separation Package (VSP) at the end of January 2021, with a deadline of February 15, 2021. Thus, when SHAROLYN STANLEY submitted for the VSP on February 15, 2021, she still did not have an approved accommodation that would have permitted her to make an informed decision regarding the VSP.

5

18.     The Defendant failed to accommodate SHAROLYN STANLEY'S most basic request - to be allowed to remove her mask to use a rescue inhaler.

19.     Thus, the only reason SHAROLYN STANLEY submitted for the VSP was due to the toxic work environment resulting from Defendant's Mask Policy with no accommodation on file and the very real threat of termination for removing her mask.to use her rescue inhaler. SHAROLYN STANLEY also suffered discriminatory treatment because she couldn't take her mask off to allow her body to acclimate to the environment of the aircraft with triggering smells, without the threat of termination, leaving her no other choice but to take the VSP or go out on unpaid leave. The VSP choice allowed SHAROLYN STANLEY to continue getting paid for 18 months. At the age of 63, and still needing income, SHAROLYN STANLEY had no other  realistic choice.

20.     The VSP was in effect from  March 1, 2021 to September 1, 2022, and at the end of the VSP, SHAROLYN STANLEY officially retired. She would not have retired had the Defendant not engaged in unlawful discriminatory actions, and intentionally violated her rights under the ADA with malice or reckless indifference.

6

21.     The Union made it very clear they would be backing Defendant's Mask Policy of termination for failing to wear a mask, and any Flight Attendant (FA) in violation would not be represented by the Union. Thus, SHAROLYN STANLEY would be fired if she was "caught" with her mask down, regardless of the reason, without an approved accommodation. The emails from Katy Hebo in Defendant's Human Resources department  were very clear on that point.

22.     The emails from Katy Hebo were very clear that SHAROLYN STANLEY would be fired if she was "caught" with her mask down, regardless of the reason. Lacking an approved accommodation in relation to the  Mask Policy was obviously interpreted by most employees as "no excuse" for not wearing a mask.

23.     The Mask policy was amended after SHAROLYN STANLEY was no longer flying for United and allowed for mask removal to take medication.

24.     SHAROLYN STANLEY emailed Defendant's CEO Scott Kirby on September 15, 2020,  explaining how the implementation of the United Mask Policy was discriminatory and harassing in nature, due

to fellow employees taking it upon themselves to enforce the policy how they saw fit. SHAROLYN STANLEY and the Defendants other Flight Attendants were trained as Flight Attendants to inform, not enforce policies/procedures and Federal Aviation Regulations (FAR). Many Flight Attendants decided it was their responsibility to enforce the United Mask Policy, with passengers and fellow employees. This of course created a very toxic and hostile work environment for passengers and crew, including SHAROLYN STANLEY.

25.     SHAROLYN STANLEY started her accommodation process in July 2020, by discussing her difficulties wearing a mask due to asthma with a EWR supervisor. It was followed up via a phone conversation with Stacy Katz, EWR Base Director. Stacy Katz also left a detailed voice message with SHAROLYN STANLEY on July 15, 2020 regarding what the Defendant was doing with Flight Attendants who couldn't wear a mask, and how to file for a reasonable accommodation.

26.     SHAROLYN STANLEY submitted her accommodation request via Defendant's Help Hub on August 21, 2020, in hopes of engaging in an interactive, reasonable accommodation process,

8

hoping for accommodation that allowed her to continue working. The interactive process never happened, in clear violation of the ADA because the Defendant failed to respectfully discuss the accommodation; failed to identify essential functions of the job ; failed to identify functional limitations; failed to determine potential reasonable accommodations; failed to determine those reasonable accommodations that are effective that meet the needs of SHAROLYN STANLEY, and failed to make the accommodation.

27.     At the time of SHAROLYN STANLEY'S accommodation request, she was working under the United Mask Policy. The Mask Policy was guided by CDC guidelines for the duration of SHAROLYN STANLEY'S employment with the Defendant, but it was not federally mandated. The Federal Mask Mandate began Feb 1, 2021, after SHAROLYN STANLEY was no longer flying for the Defendant.

28.     SHAROLYN STANLEY'S EEOC charge only addresses the basic, fundamental request for ADA accommodation to allow her to use her inhaler without the threat of employment termination.

9

29.     The Defendant discriminated against SHAROLYN STANLEY regarding removal of her mask for breathing difficulties, because CDC guidelines allowed for the removal of a mask for difficulty breathing, labored breathing, or being winded, and for the mask to remain off until normal breathing with the mask could resume.

30.     CDC guidelines suggested, if unable to socially distance, then wear a mask. When SHAROLYN STANLEY'S mask was off, she was cognizant of maintaining social distance with fellow employees.

31.     It was not a "federal violation" for SHAROLYN STANLEY to have her mask down during the time she was actively working at the Defendant, because the federal mask mandate was not in effect during SHAROLYN STANLEY'S employment at Defendant.

32.     Further, SHAROLYN STANLEY walking down the jetway while drinking water wasn't against Defendant's Mask Policy.

33.     If SHAROLYN STANLEY had her mask off when she boarded the plane, had a water, coffee or Chick-fil-a Cup in her hand, this was normal during her whole career at Defendant when she arrived onto the aircraft to begin a trip.

34.     Even if SHAROLYN STANLEY didn't have a drink in her hand, if her breathing was labored, or she was winded, removing her mask was within the CDC guidelines, and the Federal Mask Mandate.

35.     SHAROLY STANLEY was fully aware of the requirements regarding FARs and never requested not to be onboard the aircraft when passengers were boarding or already onboard, or to not perform her required safety duties. That is clearly a FAR violation. SHAROLYN STANLEY is a safety professional who has trained for over 25 years on FARs, thus she would never ask to violate a FAR in an ADA accommodation, and she would not blatantly, willingly violate a FAR.

36.     If any flight attendant requested accommodation in violation of a FAR, that would reflect on the Defendant's training program, and would be an obvious failure on Defendant's part to ensure FAs understand FAR requirements.

37.     The Defendant failed to engage in the interactive process to address SHAROLYN STANLEY'S request for accommodation.  She was never allowed the dignity and respect of a Reasonable

11

Accommodation Program (RAP) conversation. The Defendant, in violation of the ADA, never bothered to conduct the required RAP conversation with SHAROLYN STANLEY.

38.     The Federal Mask Mandate was not in effect during SHAROLYN STANLEY'S employment at Defendant.

39.     At one time SHAROLYN STANLEY requested to be allowed to walk down the jetway, out of the sight of passengers and socially distanced from her co-workers to board the aircraft she was assigned to work, without a mask. As a flight attendant SHAROLYN STANLEY cannot just magically showed up on the plane. She boarded the aircraft via the jetway just as passengers do, after checking in with gate agents (who check IDs and flight manifest) before she was able to walk down the jetway towards the aircraft to board.

40.     Because of the Defendant's failure to conduct a RAP conversation, the Defendant may have mistakenly assumed SHAROLYN STANLEY was asking to not wear a mask boarding to mean, not wear a mask and stay out of the sight of passengers as they boarded the plane.

12

41.     Up until the end of October 2020, SHAROLYN STANLEY was flying and making it work as best she could without an accommodation in place, fearfully mindful of Defendant's mask policy, and constantly worried about being reported for not wearing a mask by fellow employees.

42.     SHAROLYN STANLEY suffered emotional duress constantly because she had to be concerned about preventing an asthma attack while adjusting to the new norm of mask wearing, all while being threatened with termination. Other employees just had to adjust to the mask.

43.     SHAROLYN STANLEY would have her mask off walking down the jetway, with a drink in hand in "compliance" with the company mask policy. After she boarded the plane, she would keep her mask off during required FAR preflight equipment checks, and for the required crew briefing. All this was done without passengers on the aircraft, and SHAROLYN STANLEY made sure to socially distance from fellow crew. Also, SHAROLYN STANLEY was also eating something while performing her preflight duties, like a piece of candy that did not hinder her ability to perform her required duties but complied with the Defendant's Mask Policy.

13

44.     During crew briefing SHAROLYN STANLEY would drink water/coffee in compliance with Defendant's mask policy and she would still be maskless.

45.     After checking safety equipment, and crew briefing the only FAs that have job related duties at that point are galley FAs. At this point non galley FAs are on what could be called, a "break" until the boarding of passengers starts. The FAs are not required to find things to do. Over the years FAs have read, played Candy Crush, taken pictures, talked with each other, facetimed loved ones, stood in the jetway to cool off, or to get out of the way of cleaners/caterers/mechanics/rampers.... or in SHAROLYN STANLEY'S case, get fresh air and wait for the cleaning odors to dissipate. Nothing nefarious about an FA on the jetway before passengers are sent down to the aircraft, and after all required safety related duties have been completed.

46.     Even without a mask, if SHAROLYN STANLEY was on the jetway before passenger boarding began, without a mask to wait for "odors to dissipate", she was there due to her asthma acting up that is a CDC approved reason for having her mask off. Yet, SHAROLYN STANLEY was still reported for not wearing a mask by a fellow

14

employee. The person who reported SHAROLYN STANLEY never bothered to ask her why she was not wearing a mask yet knew enough to report SHAROLYN STANLEY was on the jetway maskless waiting for cleaning fumes to dissipate. And that was still worthy of reporting someone didn't have their mask on? This highlights the validity of SHAROLYN STANLEY'S concerns and the necessity of accommodation for asthma under the United Mask Policy.

47.     Even though SHAROLYN STANLEY was working within the guidelines of the Defendant Mask Policy, not having an approved accommodation on file was very stressful and caused emotional duress.

48.     SHAROLYN STANLEY flew with one flight attendant who timed how long passengers had their mask off when eating and drinking. It was not the Defendant's policy; the policy was you could remove your mask to eat or drink with no guidelines on specifics.

49.     SHAROLYN STANLEY observed a pilot walk down the entire cabin looking at every single passenger to ensure they had their

masks properly in place, and would in a very demeaning manner, correct anyone for having their mask not worn properly. Nowhere in the Defendant's Mask Policy did it suggest what either of these two employees were doing were approved methods of enforcing the policy. But this type of "enforcement" was being seen out in the real world onboard the Defendant's aircraft every time SHAROLYN STANLEY flew.

50.     SHAROLYN STANLEY was very worried about being turned in for not wearing a mask and terminated due to the insanity of how flight attendants were implementing this Mask Policy with fellow crew and passengers. There was no common sense in the implementation of the policy. SHAROLYN STANLEY saw FAs she had known for years, become crazy, demanding, ego driven control freaks with the Mask Policy. Before COVID if someone was caught smoking on the plane, they handled that with such dignity and grace. Over a paper mask, they lost it.

51.     SHAROLYN STANLEY had never witnessed anything like the craziness that the Mask Policy brought out in both passengers and crew.

16

52.     Because of what SHAROLYN STANLEY was seeing, she made sure every second she had her mask off, she was socially distanced from fellow employees and was either drinking or eating in accordance with United's Mask Policy.

53.     It turns out, SHAROLYN STANLEY'S concerns were valid because the Defendant was provided false information that she was not wearing a mask.

54.     SHAROLYN STANLEY never stood on a jetway maskless in violation of federal law - there was no law or mandate at the time. More importantly, she never failed to perform her safety duties.

55.     SHAROLYN STANLEY was never informed of any FAR violation dealing with failure to perform safety related duties, and she would have been notified of a FAR safety infraction because FAR safety infractions do get put aside.

56.     The last time SHAROLYN STANLEY flew was in October 2020, and she had not heard anything at the time concerning a FAR, safety violation had occurred, and she never heard a word about an alleged "infraction" until reading it in the Defendant's response to SHAROLYN STANLEY'S EEOC complaint which highlights the

17

toxic work environment at the Defendant's during the COVID -19 pandemic.

57.    SHAROLYN STANLEY was under emotional duress with the failure on Defendant's part to provide approved accommodation. She felt vulnerable to being targeted and harassed due to not wearing a mask when managing her asthma without an accommodation approved. She was "turned in" for a mask violation for having her mask off on the jetway to allow for the cleaning fumes to dissipate but was not aware that she was turned in for a mask violation until reading the Defendant's response to her EEOC Complaint.

58.    If SHAROLYN STANLEY had known during her employment that United would NOT terminate her for not wearing a mask, or even called her in for a discussion on the manner, she wouldn't have stressed and gone through the headache of trying to get an accommodation. More importantly, she would still be flying with the Defendant.

59.    SHAROLYN STANLEY could not have known that United's mask policy was just threatening words that they never intended on

enforcing. She took the policy at its word and worked within the guidelines of that policy. Knowing now that it didn't matter is frustrating and has caused SHAROLYN STANLEY harm because she lost her career based on the Defendant's Mask Policy's words, and the Defendant's failure to accommodate her disability.

60.    The Defendant's improperly focused on accommodating only for a smell in its response to the EEOC Complaint didn't make any sense because there are a variety of environmental conditions that can trigger SHAROLYN STANLEY'S asthma, such as perfume, cats, cigarette smoke, pine trees, mold, mildew, candles, air spray, to name a few. Environmentally induced asthma means things in the environment trigger your asthma.

61.    SHAROLYN STANLEY has learned, over her 64 years of having asthma, how to accommodate and live with environmental triggers, including unknown trigger something a doctor wouldn't be able to "prescribe" specific suggestions on how to manage her asthma.

62.    Every doctor SHAROLYN STANLEY has seen over her entire life asked her what she found helpful in managing her asthma. In 64

years, she has never had a doctor tell her how to accommodate her

environmentally induced asthma by listing environmental triggers.

It's a learned process that doesn't require doctors' approval on how

to manage your asthma in the real world. The doctor's suggestion is

if it triggers your asthma, avoid it. She knows a trigger because she

feels it in her lungs as they start to constrict. A doctor cannot

validate that because the goal is for an asthmatic to manage asthma.

What works for you, the asthmatic, in managing your asthma was

the question a RAP specialist should have asked SHAROLYN

STANLEY as part of the asthma-related accommodation request.

63.     Managing asthma is a 24/7, 365-day process that does not

involve SHAROLYN STANLEY'S doctor at this point in her life and

hasn't for years. Her doctor also has no clue about the working

conditions of a Flight Attendant. The doctor providing more

documentation regarding her asthma triggers and how to

accommodate was not a reasonable request, even though

SHAROLYN STANLEY complied with the request. Asking her to

make another appointment during a pandemic and pay for another

office visit for verification that yes, Clorox can trigger her asthma

seemed pointless. The Defendant's ADA office already had the ADA

medical verification form provided by fax from her doctor. The ADA Medical Verification form had been completed and faxed by her doctor on September 15, 2020.

64.    The request for further documentation from SHAROLYN STANLEY was harassing and coercive.

65.    The Defendant's ADA specialists did not have a conversation with SHAROLYN STANLEY. Instead, emails, Help Hub messages and phone messages were used resulting in Defendant's failure to engage in the interactive process to address SHAROLYN STANLEY'S request for accommodation that also resulted in discrimination and harassment, and she never was provided the opportunity to talk to a human being regarding her accommodation questions even after she requested that someone, please contact her.

66.    After seven months of constant inquiries into the status of her RAP, it became clear to SHAROLYN STANLEY that the Defendant was not going to engage in a RAP with her.

67.    SHAROLYN STANLEY was never offered accommodation - for using her inhaler or for boarding the aircraft without a mask. Most people received an email or certified letter after an actual RAP

meeting outlining the specifics of the accommodation agreed upon. If accommodation was denied, they got notice of that, but SHAROLYN STANLEY received nothing.

68.    If wearing multiple masks, a day was an accommodation United offered, SHAROLYN STANLEY was never notified. The stress of working in such a toxic environment was a factor in both her request for accommodation, and for finally caving and requesting the VSP. Working under these work conditions made her asthma worse than the actual mask. Stress is a known aggravating factor with asthma.

69.    The Defendant's failure to conduct a RAP meeting with SHAROLYN STANLEY, the threat of being fired for having to personally try to acclimate to her work environment with a known health condition while having to worry about making sure she followed a mask policy so she wouldn't be fired, caused an escalation of SHAROLYN STANLEY.S levels of stress and emotional duress. SHAROLYN STANLEY discussed this with the Defendant's ADA nurses on a couple of phone calls early in the process.  She also discussed it with Jennifer Obrien, Inflight Satellite Base Director, and

Jeff Greenman, Inflight Safety overseeing COVID policy at the Defendant in a zoom call.

70.    SHAROLYN STANLEY'S accommodation request was summed up in the CDC guidelines, and it was reasonable accommodation that should have been approved in August 2020. The Defendant supervisors, management, and medical divisions were aware of her request for accommodation via all the required avenues – Help HUB, emails, phone calls, yet she was not scheduled a meeting with anyone to discuss her accommodation request. SHAROLYN STANLEY'S doctor faxed to the Defendant the medical documentation for the accommodation request on September 1. 2020, January 20, 2021, and on January 29, 2021, yet the Defendant stated that the faxes were missing, and the Defendant stated that it never found the faxes.

71.    SHAROLYN STANLEY had been approved for personal leave for February 2021. Thus, due to the Defendant's failure to provide her with reasonable accommodation she was never able to fly again with the Defendant.  In frustration and in tears because of discrimination and abuse perpetrated by the Defendant,

23

SHAROLYN STANLEY signed the Retirement leave and it went into effect on March 1, 2021.

72.     In addition to the ADA accommodation request, SHAROYN STANLEY requested accommodation to be able to fly on her United flight benefits without a mask. The Defendant advertised in very fine print that passengers with disabilities could be accommodated regarding mask requirements. SHAROLYN STANLEY was never offered accommodation to fly as a passenger without a mask.

73.     On or about September 1, 2020, SHAROLYN STANLEY requested accommodation for masks, and faxed the medical forms to Defendant. A confirmation of the Defendant's receipt of the medical forms was received by FAX or FMLA and RAP via HelpHub.

74.     On or about September 15, 2020, SHAROLYN STANLEY emailed Scot Kirby, Defendant's CEO, concerning the discriminatory nature of mask for employees and passengers.

75.     On or about September 18, 2020, SHAROLYN STANLEY conversed with the Defendant's Base Director and Jeff Greenman

with the Defendant's COVID policy team regarding the email she sent to Defendant's CEO.

76.     On or about September 23, 2020, SHAROLYN STANLEY emailed Jeff Greenman concerning the discriminatory nature of the mask policy to employees and passengers.

77.     On or about September 24, 2020, Jeff Greenman responded saying the Defendant relies on information from experts to guide policy.

78.     On or about October 19, 2020, SHAROLYN STANLEY received an incomplete for RAP letter asking for further information from Defendant's Human Resources (HR) department.

79.     On or about October 20, 2020, SHAROLYN STANLEY messaged on Defendant's HelpHub asking for HR to please call because she needed clarification on what more was needed. She received no response. Also, she left several voice messages but received no response.

80.     On or about November 7, 2020, SHAROLYN STANLEY messaged Defendant's HelpHub asking what was taking so long. She received no response.

25

81.    On or about November 30, 2020, SHARON STANLEY sent various HelpHub requests for assistance with her ADA accommodation request. She received no response.

82.    On or about December 18, 2020, SHAROLYN STANLEY emailed Defendant's Employee Compliance department asking why the RAP process was taking so long and why there was a lack of interactive process. She received no direct response, but Defendant's HR responded a couple days later on December 23, 2020.  She was forwarded the same "incomplete for RAP letter" with no explanation via email.

83.    On or about January 12, 2021, SHAROLYN STANLEY requested on Defendant's HelpHub for someone from HR to  please call her back because she needed clarification on what exactly the Defendant  needed.

84.    On or about January 20, 2021, SHAROLYN STANLEY scheduled a follow up with her Doctor for January 20, 2021, because she wanted to cover all her bases.

85.    On or about January 20, 2021, SHAROLYN STANLEY faxed the ADA accommodation Medical documentation from her doctor to

the same Defendant number as previous faxes. All questions were answered. Also, she emailed HR and let them know the information was faxed from the Doctor's office. She received no response.

86.     On or about January 27, 2021, SHAROLYN STANLEY emailed HR asking where they stood on RAP, and specifically asked for information to make an informed decision regarding the VSP offer that came out on January 27, 2021.

87.     On or about January 27, 2021, SHAROLYN STANLEY received an email response from Defendant saying she was sent an "insufficient for RAP letter" on September 14, 2020.

88.     On or about January 27, 2021, SHAROLYN STANLEY emailed the Defendant back saying the requested information was faxed to the Defendant on January 20, 2021.

89.     On or about January 28, 2021, SHAROLYN STANLEY received an email from Defendant saying the Medical documentation from her Doctor was never received, even though the Defendant acknowledged that the note sent to the same number on the same day regarding SHAROLYN STANLEY'S foot was received.

90.     On or about January 28, 2021, SHAROLYN STANLEY emailed Defendant back expressing her frustration with the lack of a RAP process.

91.     On or about January 29, 2021, the Defendant emailed SHAROLYN STANLEY stating that the Medical documentation forms were not received for RAP. The Defendant stated that she was insufficient for RAP and needed to provide the information that was on the fax that they never received.

92.     On or about January 29, 2021, SHAROLYN STANLEY emailed Defendant asking for verification on what fax number to use. She had the doctor refax the documents.

93.     On or about January 29, 2021, SHAROLYN STANLEY filed an Ethics Complaint over the discriminatory nature of the Defendant's mask mandate, and the RAP process.

94.     On or about February 1, 2021, SHAROLYN STANLEY faxed confirmation to the Defendant from the Doctor's office that RAP information was faxed to Defendant's Medical department. She received no acknowledgement that the fax was received from the Defendant.

95.     On or about February 1, 2021, SHAROLYN STANLEY emailed Jeff Greenman about ADA accommodation and the mask policy for employee pass travel.

96.     On or about February 2, 2021, SHAROLYN STANLEY had a telephone call with Jeff Greenman regarding exemptions for passengers and employees for flying and working.

97.     On or about February 4, 2021, SHAROLYN STANLEY emailed Jeff Greenman with more questions regarding accommodations, and in particular, how to fly on her employee passes. He responded that there was a process for passengers to request accommodation and it would be the same for employees flying on passes. He briefly discussed her ADA accommodation request, and he said she wouldn't qualify because it needed to be more than "just difficulty breathing".

98.     On or about February 4, 2021, SHAROLYN STANLEY emailed Jeff Greenman about her experience with trying to ask for accommodation to fly on her pass. There was no information available online, and when she called reservations, no one had any answers. She was told the only exception was for anyone under 2.

99.     On or about February 4, 2021, Jeff Greenman apologized for the difficulty SHAROLYN STANLEY was having trying to get an ADA accommodation for masks for employees flying on their passes.

100.    On or about February 4, 2021, SHAROLYN STANLEY filed a complaint with the EEOC, EEOC#510-2021-02296.

101.    On or about February 9, 2021, SHAROLYN STANLEY emailed HelpHub asking for the status of the RAP process.  She received no response.

102.    On or about February 15, 2021, SHAROLYN STANLEY submitted Online for VSPB. She had 4 days to cancel after submitting. Her last day to report to work with the VSP was March 1, 2021.

103.    By Notice dated October 27, 2022, the EEOC issued a right to sue letter to SHAROLYN STANLEY. This action timely follows.


**COUNT I**

**FAILURE TO PROVIDE A REASONABLE ACCOMMODATION IN VIOLATION OF THE AMERICAN WITH DISABILITIES ACT, 42 U.S.C. § § 12181 et seq.**

104.   SHAROLYN STANLEY realleges and adopts, as if set out in full hereafter, the allegations contained in Paragraphs 1 through 103 above.

105.   The ADA defines "discrimination to include the failure to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an employee or applicant. SHAROLYN STANLEY is a member of a protected class under the Americans with Disability Act (hereafter "ADA").

106.   By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against SHAROLYN STANLEY in violation of the ADA.

107.   When she was a baby SHAROLYN STANLEY was diagnosed with Asthma, making her a qualified individual with a "disability" within the meaning of 42 U.S.C. § 12111 of the ADA. SHAROLYN STANLEY could perform the essential functions of her position with or without reasonable accommodation.

108.   In July 2020, SHAROLYN STANLEY asked her supervisor for an accommodation, and in August 2020, SHAROLYN

31

STANLEY notified Defendant's ADA team about her disability and requested reasonable accommodation for her asthma condition,  to be allowed to remove the mask to use her inhaler without the threat of termination.

109.    Defendant refused to engage in the interactive process and denied SHAROLYN STANLEY'S request claiming that they did not receive the Medical documentation.

110.    SHAROLYN STANLEY was subjected to being reported for not wearing a mask by a fellow employee who never bothered to ask her why she was not wearing a mask. Even though she was working within the guidelines of the Defendant Mask Policy, not having an approved accommodation on file was very stressful and caused emotional distress. She was constantly worried about being turned in for not wearing a mask and being terminated due to the unapproved insane "enforcement" of the mask policy by some Flight Attendants and Pilots. She flew with one flight attendant who timed how long a passenger had their mask off when eating and drinking. Another time, a pilot walked down the entire cabin looking at every single passenger to ensure they had their masks properly in place, and would in a very demeaning manner, correct

anyone whose mask was not worn properly. Nowhere in the Defendant's Mask Policy does it suggest what either of these two employees were doing were approved methods of enforcing the Mask Policy. But this type of enforcement was being seen onboard the Defendant's aircraft every time she flew.

111.    SHAROLYN STANLEY suffered damage as a result of Defendant's unlawful discriminatory actions, including back pay and benefits, interest on back pay and benefits, front pay and benefits, liquidated damages, emotional distress, and any other damages allowable at law,

    **WHEREFORE,** Plaintiff, SHAROLYN STANLEY, prays for a judgment against the Defendant, UNITED AIRLINES, INC., and the following relief:

a.  Back pay and benefits.

b.  Interest on back pay and benefits.

c.  Front pay and benefits.

d.  Liquidated damages.

e.  Any other damages allowable at law.

f.  Reinstatement.

g.  Attorney's fees and costs; and

33

h.    For any other relief this Court deems just and equitable.

## COUNT II
## FLORIDA CIVIL RIGHTS ACT- DISABILITY

112.    Plaintiff realleges and adopt, as if set out in full hereafter, the

allegations contained in Paragraphs 1 through 111 above.

113.    Plaintiff is a member of a protected class under the Florida

Civil Rights Act of 1992 (FCRA) that protects employees from

discrimination based on disability.

114.    By the conduct described above, Defendant engaged in

unlawful employment practices and discriminated against

SHAROLYN STANLEY by failing to engage in the interactive

process and failing to provide a reasonable accommodation in

violation of the Florida Civil Rights Act, Florida Statutes Chapter

760.

115.    As a result of Defendant's unlawful discrimination, Plaintiff

has suffered and continues to suffer damages.

**WHEREFORE,** Plaintiff, SHAROLYN STANLEY, prays for the

following damages against Defendant, UNITED AIRLINES, INC.:

a.      Back pay and benefits.

b.      Interest on back pay and benefits.

c.      Front pay and benefits.

d.      Compensatory damages for emotional pain and suffering.

e.      Punitive damages.

f.    For costs and attorney's fees.

g.    For any other relief this Court deems just and equitable.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff, SHAROLYN STANLEY, requests

a jury trial for all issues so triable.

**DATED** this 18th day of January 2023.

**LAW OFFICE OF DR. BELINDA NOAH**

*/s/ Belinda Noah*_____

**BELINDA NOAH, ESQUIRE**
Florida Bar No.: 360023
Primary: noahlawfirm@yahoo.com
Secondary: belinotimbers@gmail.com
10144 Whisper Pointe Drive
Tampa, FL 33647
Telephone (813 808-5351

*Trial Attorney for Plaintiff*

36