**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| **SHAROLYN STANLEY,**<br><br>**Plaintiff/**<br>**Counter-Defendant,**<br><br>**vs.**<br><br>**UNITED AIRLINES, INC., a foreign profit corporation,**<br><br>**Defendant/**<br>**Counter-Plaintiff.** | **CASE NO. 6:23-cv-00090-CEM-DAB** |

**DEFENDANT'S MOTION FOR RULE 11 AND SECTION 1927 SANCTIONS AGAINST PLAINTIFF AND PLAINTIFF'S COUNSEL AND INCORPORATED MEMORANDUM OF LAW**

Defendant/Counter-Plaintiff, United Airlines, Inc. ("Defendant" or "United"), pursuant Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's inherent authority, moves to sanction Plaintiff/Counter-Defendant, Sharolyn Stanley, and her counsel, Belinda Noah, Esq.,[1] and states:

## I. PRELIMINARY STATEMENT

Plaintiff, a former flight attendant who voluntarily separated from the Company, *admitted* to electing United's Voluntary Separation Leave ("VSL")

[1] This Motion is also directed to Attorney Noah's law firm, The Law Offices of Dr. Belinda Noah, P.A.

program—including a release agreement (the "Release)—and who further *admitted* to receiving approximately $80,000.00 in VSL wages from United in consideration for her Release and separation, broke her promise not to sue United when she filed the instant lawsuit under the Americans with Disabilities Act ("ADA") and the Florida Civil Rights Act ("FCRA"). [**Exhibit 1**, Pl.'s Depo. 168:15, Def.'s Ex. 19 (Release).]

More specifically, in February 2021, Plaintiff voluntarily elected to participate in United's VSL program, to separate her employment from United in exchange for receiving 18-months of VSL wages over $80,000.00. Plaintiff unambiguously testified at her deposition that:

> (a) she used United's internet portal, was prompted "do you accept the conditions of the VSL, click yes or no," she clicked yes, "and that was it";
> (b) she reviewed both the VSL documents generally and the Release specifically;
> (c) she did not revoke her selection within the provided multi-day period; and
> (d) she received approximately $80,000.00 from United in monthly payments over an 18-month period.

[Ex. 1, Pl.'s Depo. 35:3-4; 35:22-23; 158:25-159:19; 160:6-161:2; 167:5-19; 168:11-13, 18-23; 211:16-17].

On June 10, 2024, *only five (5) days* after Plaintiff's deposition, Plaintiff's counsel filed an Answer and Affirmative Defenses [Doc. 79] to United's Counterclaims [Doc. 44], which included numerous denials and positions that directly contradict her client's sworn testimony. Plaintiff's counsel denies <u>every</u>

single factual allegation related to United's VSL and Release. [*Compare* Doc. 44 *with* Doc. 79 ¶¶ 5, 7-9, 11-13]. In fact, the Answer is so frivolous that Plaintiff's counsel even denies facts she herself alleged in her Complaint, like Plaintiff receiving the VSL payments. [*Compare* Doc. 1 ¶ 19 *with* Doc. 44 ¶ 12, Doc. 79 ¶ 12].

Furthermore, despite Plaintiff's straightforward, knowledgeable testimony about the VSL program, her participation, and her election, nearly all of Plaintiff's eleven (11) affirmative defenses have no basis in fact or law as they seek to void the VSL and accompanying Release based upon fraud, coercion, or lack of knowledge. [*See* Doc. 79, at 12-16]. The conclusory, factually vacuous new defenses are not supported *in any way* by Plaintiff's deposition testimony, given *less than a week* before the Answer was filed.

Plaintiff's counsel could (and should) have discovered early—before filing the case—that Plaintiff executed a valid and binding Release. *At the latest,* Plaintiff's counsel had *actual knowledge* of the baseless nature of her position after her client's deposition. Nonetheless, she proceeded to file the Plaintiff's Answer and Affirmative Defenses contradicting her client's admissions. *See, e.g., Peer v. Lewis*, No. 06-60146-Civ, 2013 U.S. Dist. LEXIS 48287, at *32 (S.D. Fla. Apr. 3, 2013) ("*Peer II*") (imposing Rule 11 sanctions, imputing successor counsels with knowledge of prior counsel's objectively frivolous filing after client's deposition,

finding counsels "reaffirmed and continued to advocate a case they knew or should have know[n] was objectively frivolous…").

Plaintiff and Plaintiff counsel's factual denials and defenses aimed at voiding the Release also have no basis in law. Under general contract law, to void, Plaintiff would have to be willing to return the more than $80,000.00 she agreed United paid her under the VSL. Plaintiff's refusal to return United its money—she states that returning the money would be "invalid, unjust, and unconscionable" because of the Releases invalidity and one-sidedness [*see* Doc. 79, p. 15]—makes Plaintiff's factual and legal positions related to the VSL even more frivolous. Retaining the funds also ratifies the Release.

Plaintiff and especially Plaintiff counsel knew or should have known—either at the time of filing the Complaint, when Defendant filed a Motion to Dismiss based on the Release or, at the very least, as of Plaintiff's deposition on June 5, 2024—that there was no basis in fact or law for the claims. Even after Defendant provided Plaintiff with a copy of this Motion for Sanctions, outlining the settled case authority on these issues, Plaintiff and her counsel continue to pursue this frivolous action. As such, Defendant respectfully believes that Plaintiff and Plaintiff's counsel's dogmatic pursuit of this case warrants sanctions.

## II. RELEVANT BACKGROUND

1. On January 18, 2023, Plaintiff filed the instant action, alleging disability discrimination against United under the ADA and FCRA. Plaintiff's counsel, Belinda Noah, signed the Complaint. [*See* Doc. 1, at 36].

2. Particularly relevant, Plaintiff agreed she participated in United's VSL program while claiming she had "no other realistic choice" but to participate in the program—she alleged, in part:

> [T]he Defendant offered a Voluntary Separation Package (VSP) at the end of January 2021, with a deadline of February 15, 2021. Thus when SHAROLYN STNLEY *submitted for the VSP on February 15, 2021*, she still did not have an approved accommodation that would have permitted her to make an informed decision regarding the VSP.
>
> * * *

[Doc. 1 ¶ 17].

> [T]he only reason SHAROLYN STANLEY submitted for the VSP was due to the toxic work environment resulting from Defendant's Mask Policy with no accommodation on file and the very real threat of termination for removing her mask to use her rescue inhaler. SHAROLYN STANLEY also suffered discriminatory treatment because she couldn't take her mask off to allow her body to acclimate to the environment of the aircraft with triggering smells, without the threat of termination, *leaving her no other choice but to take the VSP* or go out on unpaid leave. The *VSP choice allowed* SHAROLYN STANLEY to *continue getting paid for 18 months*. At the age of 63, and still needing income, SHAROLYN STANLEY had *no other realistic choice.*

[Doc. 1 ¶ 19, emphasis added]. The Release is not expressly referenced.

3. In March 2023, Plaintiff's counsel indisputably saw a copy of the operative release when United filed a Motion to Dismiss based upon the VSL's Release, attaching a copy of it to its Motion. [Doc. 29, Ex. A].

4. Responding in opposition to United's Motion, Plaintiff acknowledged and essentially admitted signing the Release but argued she "did not voluntarily and knowingly execute the release agreement." [Doc. 33, at 5].

5. In response to United's document requests directed to Plaintiff's factual allegations—including any claims made at paragraphs 17, 19, or elsewhere in her Complaint about having "no choice" but to sign the Release—Plaintiff's counsel first raised boilerplate, overbreadth objections and, after an Order compelling a response [Doc. 74], produced no evidence whatsoever supporting coercion or other grounds to void the Release. [*See* Doc. 61, Ex. 2 Pl.'s Resp. RFP ¶¶ 3, 10, 19, 20, 24; *see also* **Exhibit 2**, Pl.'s Am. Resp. RFP].

6. On April 30, 2024, United filed an Amended Answer, countersuing Plaintiff for breach of contract and, in the alternative, claims in equity, based upon her Release and covenant not to sue. [Doc. 44].

7. The Release states, in relevant part:

> In exchange for the benefits, travel privileges, and other valuable consideration provided under the VSL, I hereby:
>
> - Choose to accept the Company's offer (based on the box I checked on the Electronic Application Form on Help Hub), subject to approval by the Company; and

- *Agree to waive any claims and release the Company from any liability related to my employment with or my decision to separate from the Company.*

* * *

I understand that signing this Release is an important legal act and that I am giving up important legal rights. I have read this Release, understand it, and am signing it knowingly and voluntarily. The Company advised me to consult an attorney before executing this Release, and I have done so or voluntarily decided not to consult an attorney.

In exchange for participating in the VSL, **I irrevocably agree to resign my employment (and retire, if applicable) with a Separation Date as set forth in the Program Overview.**

* * *

Specifically included in this Release are, among other things, all claims of alleged *employment discrimination, harassment, or retaliation prohibited by Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act*, the Workers Adjustment and Retraining Notification Act, any *state law* . . .

* * *

**I understand and agree that I am releasing <u>all claims</u> that I may have and that I do not now know or suspect to exist against the Released Parties, except as specifically excluded in this Agreement.**

This Agreement does <u>not</u> bar me from making or asserting…any claim or right which by law cannot be waived, including my right to file a charge with an administrative agency or to participate in an agency investigation, including but not limited to the Equal Employment Opportunity Commission ("EEOC"). I waive, however, the right to recover money if any federal, state, or local government agency, including but not limited to the EEOC, pursues a claim on my behalf or on behalf of a class to which I may belong that arises out of or relates to my employment or severance from employment.

* * *

Except as described above, *I agree not to sue any of the Released Parties or become a party to a lawsuit* on the basis of any claim that arises out of any aspect of my employment or severance from employment.

* * *

[Ex. 1, Pl.'s Depo. 168:15, Def.'s Ex. 19 (Release), *italics* added, **bold** and <u>underline</u> original].

8. Plaintiff moved to dismiss the Counterclaims and, in seeking to Reply to United's opposition, Plaintiff's counsel filed a now stricken,[2] proposed Reply that claimed Plaintiff only "purportedly" signed the Release. [Doc. 52, at 10, emphasis added].

9. United deposed Plaintiff on June 5, 2024. [*See* Ex. 1, Pl.'s Depo.]. Plaintiff's counsel defended Plaintiff at the deposition, witnessed her client making a series of highly relevant admissions, and did not ask any questions at the conclusion of the deposition.

10. Generally, Plaintiff admitted that on February 15, 2021, she used United's Help Hub system and elected the VSL Program B, that she did not revoke her selection, and she participated in the VSL program. [Ex. 1, 211:16-17; 160:13-15; 160:6-12, 16-18]. Plaintiff testified as to the VSL/Release election as follows:

> Q. And I'm sorry, for the record, *did you elect Program B?*
> A: *I did.*
> Q. How did you go through the election process for the VSL, is that on Help Hub?
> A: Yes.
> Q: So is that a form that you had to fill out on Help Hub or was it –
> A: It was, *do you accept the conditions of the VSL, click yes or no*, and that was it.
> Q. Okay
> A. Oh, and enter your personal e-mail account.
> Q. And so, for the record, *did you click yes or no?*
> A. *I clicked yes*.

[2] The Court struck the proposed Reply on May 28, 2024, based upon Plaintiff failing to first obtain leave under Local Rule 3.01(d), [*see* Doc. 66], which Plaintiff's counsel conceded at the Court's in-person May 23, 2024, hearing.

[Ex. 1, 158:25-159:19, emphasis added].

11. Plaintiff agreed she received approximately $80,000.00 in VSL payments from United, testifying:

> Q: And were you paid during that entire time?
> A: From March 1, 2021 until 9/15/2022 I was paid. I have paychecks. My last paycheck was 9/15.
> Q. Okay. And we went through this before, but *you said it was about $80,000?*
> A. *Yes, correct*.
> Q. And during that time, did you still have employee travel benefits?
> A. Yes.

[Ex. 1, 160:19-161:2, emphasis added; *see also id.*, 35:3-4; 35:22-23].

12. Plaintiff testified extensively and in detail about her knowledge of United's VSL program, including the Release, prior to making her election. Plaintiff:

a. Testified United provided an informational packet to her through its online Help Hub portal and Plaintiff submitted questions through Help Hub about the VSL program [Ex. 1, 154:3-9];

b. Explained the differences between the available VSL Option A and Option B [*id.*, 158:13-21];

c. Confirmed she had seen and reviewed information about the VSL program options on United's website. [*Id.*, 162-24-163:2]; and

d. Admitted United's VSL program's governing documents, including the Release, were located in her Help Hub portal, <u>and that she reviewed them</u>. [*Id.*, 167:5-10, 167:11-19; 168:11-13; 168:18-21; 168:22-23].

13. At no point during Plaintiff's deposition, including when asked at the end whether she had any other facts or information related to her claims, did

Plaintiff contend that her VSP election was involuntary or coerced by United. [*See* Ex. 1, Stanley Depo. 1-230].

14. To date, with discovery closed, Plaintiff has produced no documents or other evidence to support an argument she lacked knowledge or was coerced into electing the VSL program.

15. Despite these clear deposition admissions, in Plaintiff's Answer to United's Counterclaims, Plaintiff's counsel frivolously denied many previously admitted factual allegations, including:

| Para. | United's Counterclaim [Doc. 44] | Plaintiff's Answer [Doc. 79] |
|---|---|---|
| 5 | Pl. qualified for VSL participation | Legal conclusion or else denied |
| 7 | United offered Pl. option of choosing VSL Program A or B | Legal conclusion or else denied |
| 8 | Pl. accepted VSL Program B, through United's online portal by checking the box on the application form | Legal conclusion or else denied |
| 9 | Pl.'s selection constituted an execution, acceptance, and agreement to the VSL agreement and release | Legal conclusion or else denied |
| 11 | United confirmed Pl.'s VSL selection and VSL became effective | Legal conclusion or else denied |
| 12 | Pl. received 18 months of pre-separation leave | Legal conclusion or else denied |
| 13 | United provided Pl. with benefits, including payments totaling approx. $86,073.99 | Legal conclusion or else denied |

16. Plaintiff also raised eleven affirmative defenses to United's Counterclaims, nine of which sought to void the Release, including based upon coercion, fraud, or lack of knowledge.[3] [Doc. 79, pp. 12-16].

## III. MEMORANDUM OF LAW

### a. Rule 11 Sanctions

The Eleventh Circuit succinctly outlined both Rule 11's purpose, as well as the function and import of an attorney's signature:

> The purpose of Rule 11 is to *deter baseless filings* in district court and thus streamline the administration and procedure of federal courts. When an attorney files a pleading in federal court, the attorney *signs the pleading to certify* that, among other things, **(1)** the pleading is not being presented for an improper purpose; **(2)** the legal contentions are warranted by existing law or a nonfrivolous argument to change existing law; and **(3)** the factual contentions have evidentiary support or will likely have evidentiary support after discovery.

*Peer v. Lewis*, 606 F.3d 1306, 1312 (11th Cir. 2010) (citations omitted, emphasis added) ("*Peer I*"). Courts apply a two-part analysis in deciding upon Rule 11 sanctions: "(1) whether the party's claims are *objectively frivolous*, and (2) whether the person who signed the pleadings *should have been aware* that they were

[3] Plaintiff alleges in her affirmative defenses to United's Counterclaims that: she did not "knowingly and voluntarily agree" to give up her right to sue but was "coerced to sign the waiver"[Doc. 79, p. 12]; United "intentionally" made a "material misrepresentation" related to Plaintiff's accommodation request, invalidating the Release based upon fraud [Doc. 79, p. 13]; the Release waived her right to sue [Doc. 79, p. 13]; Plaintiff had "inadequate time to consider the waiver" [Doc. 79, p. 14]; Plaintiff was "coerce[d]" into signing the Release [Doc. 79, pp. 14, 16]; there was a "lack of negotiations" before Plaintiff signed the Release [Doc. 79, p. 15]; the Release contained "overwhelmingly one-sided contract terms demonstrating no voluntary meeting of the minds was possible" [Doc. 79, p. 15]; and the Release was "made in bad faith" [Doc. 79, p. 16].

frivolous." *Dyer v. Bank of N.Y. Mellon & Jp Morgan Chase Bank*, No. 5:18-cv-323-Oc-30PRL, 2018 U.S. Dist. LEXIS 224703, at *14 (M.D. Fla. Sep. 10, 2018) (quoting *Peer I*, 606 F.3d at 1311) (emphasis added).[4] A court may charge counsel with knowledge of the objectively frivolous nature of a filing where counsel receives "convincing proof" of its frivolous nature. *Peer II*, 2013 U.S. Dist. LEXIS 48287, at *32 (referencing factual findings in *Peer I*).

Here, *after* United filed the operative Release and *after* Plaintiff admitted, under oath, to signing it, Plaintiff's counsel first filed her unsupportable denials and defenses to the VSL and Release and now continues to advance her spurious arguments in the face of all evidence to the contrary, thereby violating Rule 11(b) in multiple ways.

***Initial Complaint.*** Plaintiff's initial Complaint is likely sanctionable. Rule 11 requires Plaintiff's counsel to certify that "to the best of the person's knowledge,

---

[4] In determining whether a suit is frivolous, "a district court must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." *Sullivan v. Sch. Bd.*, 773 F.2d 1182, 1189 (11th Cir. 1985).

> Factors considered important in determining whether a claim is frivolous also include: (1) whether the plaintiff established a *prima facie* case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits. *See, e.g., E.E.O.C. v. Kimbrough Investment Co.*, 703 F.2d 98, 103 (5th Cir. 1983); *Jones*, 656 F.2d at 1146. While these general guidelines can be discerned from the case law, they are general guidelines only, not hard and fast rules. Determinations regarding frivolity are to be made on a case-by-case basis.

*Id.*

information, and belief, formed after *an inquiry reasonable under the circumstances*," the allegations are legally warranted and factually supported. FRCP 11(b); *see also Peer I*, 606 F.3d at 1312. Here, an attorney's reasonable inquiry should surely have included reviewing the client's VSL separation papers, including the Release. At a minimum, a reasonable inquiry was required, nothing indicates this occurred, and subsequent events strongly suggest no such reasonable inquiry occurred.

***Plaintiff Counsel's Continued Duty of Inquiry.*** After an initial filing, Rule 11 imposes an *ongoing obligation* on attorneys, requiring the attorneys to stop advancing a filed pleading if discovery reveals a pleading's contentions are devoid of factual support. *See, e.g., Turner v. Sungard Bus. Sys.*, 91 F.3d 1418, 1422 (11th Cir. 1996) ("That the contentions contained in the complaint were not frivolous at the time it was filed does not prevent the district court from sanctioning [filer] for his continued advocacy of them *after it should have been clear* that those contentions were no longer tenable.") (emphasis added). Even if Plaintiff's counsel did not know about the frivolous nature of the claims at the time of filing the Complaint, she surely should have known when Defendant filed a Motion to Dismiss based on and attaching the Release.

***Plaintiff's Objectively Frivolous Factual Positions: Deposition Admissions and Improper Denials.*** Even if the Court gave Plaintiff's counsel every benefit of the doubt as to her knowledge or prior reasonable inquiries, Plaintiff's

deposition in June 2024 was Plaintiff counsel's point-of-no-return: not only should she have now known her continued denial[5] of the VSL election and Release signing was objectively frivolous—itself sufficient under Rule 11 for sanctions—but she now had *actual* knowledge that the factual contention she was advancing lacked evidentiary support. *Dyer*, 2018 U.S. Dist. LEXIS 224703, at *14 (describing Rule 11 two-part analysis).

During her deposition, United asked Plaintiff a series of questions related to her election of the VSL with the Release, all of which she answered in the affirmative. Plaintiff's testimony allowed for no ambiguity whatsoever that she voluntarily elected the VSL program, that she reviewed the Release, and that she accepted the terms and conditions of the VSL program, including the Release. In fact, at the end of the deposition, when asked whether she had any additional facts or information in support of her claims, Plaintiff described some policies and a press release by United on masks, but at no point did she raise any issue with her election of the VSL—and her attorney asked her no questions whatsoever.[6] [Ex. 1, 228:21-229:11].

---

[5] For example, in her now-stricken, proposed Reply to United's Counterclaims, signed by Plaintiff's counsel, Plaintiff advised that "***purportedly*** signing a release and covenant not to sue" would not prevent her lawsuit. [Doc.52, at p. 10, emphasis added].

[6] Plaintiff testified she only had one question as to the Release- whether she could still pursue a Charge of Discrimination. [Ex. 1, Stanley Depo. 154:3-9, 169:24-170:5]. Plaintiff was told she could. [*Id.*, 169:24-170:5]. United reviewed the section of the Release with her that explained she could still pursue a Charge but waived any right to recover money and agreed not to sue United. [*Id.*,

Despite these admissions, rather than meeting their continued duty of candor to the Court, Plaintiff and Plaintiff's counsel doubled down by answering United's Counterclaim and denying <u>every single factual allegation related to United's VSL and Release</u>, as well as her own pled fact, in the Complaint, that she was paid by United for 18-months under the VSL. [*See* above, at pp. 10-11, ¶¶ 15-16]. *Gulisano v. Cohen*, 34 F.4th 935, 942 (11th Cir. 2022) ("Sanctions are warranted [] when the attorney exhibits 'a deliberate indifference to obvious facts'."); FRCP 11(b)(3), (4) (attorney signing certifies factual contentions and denials supported by evidence).

***Plaintiff's Objectively Frivolous Legal Position in Avoidance of the Release.*** After being alerted to her frivolous factual positions, Plaintiff will undoubtedly retreat to her affirmative defenses to United's Counterclaim, arguing that even if she elected the VSL and accompanying Release, she nonetheless raises a colorable argument to avoid its application. This is not so.

Rule 11 sanctions are appropriate where the attorney advances frivolous legal claims. *Gulisano*, 34 F.4th at 942. The Eleventh Circuit counseled that:

> A legal claim is frivolous when it has *no reasonable chance of succeeding*. When the attorney's evidence is "merely weak," but supports a claim under existing law *after a reasonable inquiry*, sanctions are unwarranted. Sanctions are warranted, however, when the attorney exhibits 'a *deliberate indifference to obvious facts*.'

---

168:18-173:10]. When asked, Plaintiff confirmed that she did not ask anyone whether she could pursue a lawsuit. [*Id.*, 169:18-170:2].

*Id.* (citation omitted, emphasis added).

Here, Plaintiff's counsel's filed defenses, which are nothing more than an eleventh-hour attempt to avoid the Release, have "no reasonable chance of success." *Id.* In essence, Plaintiff alleges she was coerced into signing a Release without sufficient time to review it, based upon misrepresentations by United. [*See* above, p. 11, at f.n. 2]. But none of this is supported, legally or factually.

This is more than a weak case. Despite the pleadings and discovery being closed and substantial motion practice having occurred, Plaintiff and her counsel have <u>offered no evidence</u> supporting a legal avoidance of her Release.

As a threshold matter, despite Plaintiff's Answer expressly refusing to return the over $80,000.00 she received in consideration for the Release [*see* Doc. 79, p. 15], general contract law requires this return if she wants to argue the Release's voidability—her retaining the funds also acts as a ratification. *See, e.g., Bacon v. Stiefel Labs., Inc.*, No. 09-21871-CV, 2011 U.S. Dist. LEXIS 119654, at *25 (S.D. Fla. Oct. 17, 2011) ("[G]eneral contract law provides that Plaintiffs' failure to return all monies paid to them for the releases prevents them from attempting to invalidate the release agreements.") (citations omitted); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1278 (11th Cir. 2004) (applying Florida law, requiring return of settlement funds to avoid release of § 1981 claims); *G.E.E.N. Corp. v. Se. Toyota Distribs.*, CASE NO: 93-632-CIV-ORL-19, 1994 U.S. Dist. LEXIS 21553, at *22

(M.D. Fla. Aug. 31, 1994) ("If a releasor retains the consideration after learning that the release is voidable, the continued retention of the benefits constitutes a ratification of the release.").[7]

But beyond ratification and repayment, Plaintiff's defenses, centered on voiding the Release due to fraud and/or duress, do not establish a colorable, non-frivolous claim. *Berman v. Kafka*, 518 F. App'x 783, 785 (11th Cir. 2013) (Florida duress claims require (1) involuntary acceptance of terms under (2) circumstances "permit[ing] no other alternative, and (3) resulting from "coercive acts of the opposite party;" in Florida, fraudulent misrepresentation/inducement requires (1) a material factual misrepresentation, (2) knowledge of falsity, (3) intent to induce, and (4) injury from justifiable reliance).[8] Plaintiff has offered zero evidence to support her legal position.

[7] The VSL's governing documents contain a Controlling Law provision specifying Illinois law applies to interpretations of the contract. [Ex. 1, 167:2, Def.'s Depo. Ex. 18, at PDF p. 11 of 11]. United does not oppose applying Florida law and has not identified any Illinois law leading to a different result. *See, e.g., Rinaldi v. World Book, Inc.*, No. 00 C 3573, 2001 U.S. Dist. LEXIS 8420, at *15 (N.D. Ill. May 2, 2001) ("By retaining the benefits, plaintiffs ratified the release, and they cannot now void the contract.").

[8] Illinois' law appears substantially similar to Florida's standard. *Rinaldi v. World Book, Inc.*, No. 00 C 3573, 2001 U.S. Dist. LEXIS 8420, at *14 (N.D. Ill. May 2, 2001) (To prove duress, the plaintiff must show that the defendant's wrongful act caused her to be "bereft of the quality of mind essential to making a contract."); *Rudolph v. Santa Fe Park Enters., Inc.*, 122 Ill. App. 3d 372, 374, 78 Ill. Dec. 38, 40, 461 N.E.2d 622, 624 (1984) ("Fraud in the inducement is where the party knows that he is executing a release but was induced to do so by false representations of the other party as to matters other than the character of the instrument.").

In fact, her Complaint *directly contradicts* any voidability argument. Plaintiff alleged that because she had not received an ADA accommodation to remove her mask, this "[left] her no other choice but to take the VSP [aka VSL] *or go out on unpaid leave*. The VSP *choice* allowed [her] to *continue getting paid for 18 months*. At the age of 63, and still needing income, [she] had *no other realistic choice.*" [Doc. 1 ¶ 19, emphasis added]. In other words, Plaintiff did have a choice. According to her own telling, she had a choice of unpaid leave or taking United's paychecks for 18 months without flying for the company, and then separating. Even assuming that Plaintiff's allegations are true, and she felt like she needed to take the VSL to avoid "the very real threat of termination for removing her mask" or "discriminatory treatment because she couldn't take her mask off," this is not fraud or duress. *Id.* Rather, this is the very reason employees sign releases, often after the alleged conduct occurs and not in anticipation thereof: to waive an alleged claim in exchange for some monetary consideration.

Critically, Plaintiff's own deposition testimony eviscerated her voidability argument: she showed detailed knowledge of United's VSL program; she admitted to clicking the appropriate box, thereby agreeing she "accept[ed] the conditions of the VSL"; she reviewed the VSL documents and Release, accessing them in United's online Help Hub portal; she did not revoke her selection during the applicable period of days; and she has admitted to retaining and not returning

the approximately $80,000.00 from United paid for the VSL program participation, thereby ratifying the Release. [*See* above, pp. 8-10, at ¶¶ 9-14].

Surely, a modicum of proof, or some specificity in the defenses—particularly at this late stage in the case—should be required to avoid running afoul of Rule 11. Plaintiff offers nothing. Her conclusory, threadbare affirmative defenses alleging "coercion" and "duress," or that the Release was "not knowingly and voluntarily" agreed to include zero factual allegations. This is especially egregious since her Answer provided conclusory denials of many allegations that Plaintiff admitted just *5 days earlier*, under oath, during her deposition. Rule 11 should apply.

**b. <u>Section 1927 Sanctions</u>**

Section 1927 empowers the Court to require those who "[multiply] the proceedings in any case unreasonably and vexatiously…to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. *See also Peer II*, 606 F.3d at 1314 ("Unlike Rule 11, which is aimed primarily at pleadings, under section 1927 attorneys are obligated to avoid dilatory tactics throughout the entire litigation.").

Here, there is ample evidence that the frivolous factual and legal positions taken by Plaintiff's counsel regarding the VSL and Release have "multipl[ied] the proceedings unreasonably and vexatiously," and that the positions were pursued

"knowingly and recklessly." *Fitzgerald v. Regions Bank*, No. 5:13-cv-36-Oc-10PRL, 2014 U.S. Dist. LEXIS 4547, at *9 (M.D. Fla. Jan. 14, 2014). A timeline of the relevant positions taken illustrates this point:

| | |
|---|---|
| January 2023: | Complaint alleges Plaintiff accepted the VSL and received 18-months of payments, claiming "no other realistic choice" but to take the VSL. While the VSL included the Release, the Release is not expressly referenced. [*See* above, p.5, at ¶ 2]. |
| March 2023 | United files copy of Release with its Motion to Dismiss. [*See* [*See* above, p.6, at ¶ 3]. |
| April 2023 | Plaintiff *acknowledges the Release signing* but argues she "did not voluntarily and knowingly execute the release agreement." [*See* above, p.6, at ¶ 4]. |
| May 17-June 4, 2024 | Plaintiff offers boilerplate objections in response to United's document requests addressing Plaintiff's Complaint, and after the Court overrules the objections, offers no evidence to support factual allegations of coercion or other grounds for voiding Release. [*See* above, p.6, at ¶ 5]. |
| May 22, 2024 | Responding to United's Counterclaim, Plaintiff's now-stricken Reply refers to "purportedly signing" the Release. [*See* above, p.8, at ¶ 8]. |
| June 5, 2024 | Plaintiff testifies extensively about her VSL selection, reviewing the documents—including the Release—and accepting approximately $80,000.00 in monthly VSL payments from United. Plaintiff also showed extensive knowledge of the VSL program, supporting her uncoerced selection, and offered no testimony or documents to support fraud or duress. [*See* above, p.8-10, at ¶¶ 9-14]. |
| June 10, 2024 | Plaintiff's counsel files Answer and Affirmative Defenses to United's Counterclaims denying all relevant facts related to the VSL and Release, including previously pled facts in her own Complaint and in direct contradiction to her deposition testimony.<br><br>Plaintiff raises eleven affirmative defenses, most of which seek to void the Release on grounds of coercion, fraud, or lacking knowledge. [*See* above, p.10-11, at ¶¶ 15-16]. |

Plaintiff counsel's initial waffling between admissions and denials about the VSL and Release, followed by Plaintiff's plain deposition admissions, followed yet again by clear denials of previously pled facts and positions in Plaintiff's Answer, as well as factually unsupportable defenses seeking to void the Release, meets Section 1927's "knowing[] and reckless" standard and unmistakably multiplied this proceeding. *See Fitzgerald*, 2014 U.S. Dist. LEXIS 4547, at *9.

**c. <u>Sanctions Under the Court's Inherent Authority</u>**

This Court's inherent powers to sanction may be unlocked where parties or counsel act in "bad faith, vexatiously, wantonly, or for oppressive reasons." *See Saunders v. Signature Flight Support, LLC*, No. 6:23-cv-230-RBD-LHP, 2024 U.S. Dist. LEXIS 99094, at *44 (M.D. Fla. June 4, 2024) (citations omitted).

The "party moving for sanctions must show *subjective* bad faith," which can be shown either (1) by direct evidence of subjective bad faith or (2) by conduct "so egregious that it could only be committed in bad faith." Bad faith exists "where a party or attorney *knowingly* or recklessly *raises a frivolous argument*, delays or disrupts the litigation, or hampers the enforcement of a court order." *Id.* (emphasis added, multiple citations and quotations omitted, emphasis original).

Here, if Plaintiff counsel's actions and filings do not meet Section 1927's objective bad faith standard, surely the factually unsupported filing—especially this late in the litigation and after substantial discovery—of Plaintiff's Answer and

Defenses meets the *subjective* bad faith test, that the filing was both frivolous and "knowing." *Id.,* 2024 U.S. Dist. LEXIS 99094, at *44. Plaintiff's counsel filed a pleading containing denials and conclusory defenses directed to Plaintiff's VSL election and the operative, outcome-determinative Release that, at its core, runs directly contrary to her client's deposition testimony, as well as prior factual allegations made in Plaintiff's own Complaint. This epitomizes, at the very least, subjective bad faith.

**d. <u>Potential Sanctions for the Court's consideration.</u>**

Courts have broad discretion to devise appropriate sanctions, including under Rule 11 and its inherent authority. FRCP 11 (1993 Advisory Cmt. Notes) (non-exclusive list, including striking papers, discipline, and monetary sanctions); *Saunders*, 2024 U.S. Dist. LEXIS 99094, at *44 (inherent sanction powers include "monetary penalties, adverse inferences, and the striking of claims or defenses."). *C.f.* 28 U.S.C. § 1927 (2024)(attorney found to have "unreasonably and vexatiously" "multipl[ied] the proceedings" may be personally sanctioned for "excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.").

***Attorney's Fees and Costs.*** This Court should award United its reasonable attorney's fees, not just for this Motion, but also for the costs United incurred as a direct result of Plaintiff's counsel's frivolously filing the underlying action. If Plaintiff's counsel had conducted a reasonable inquiry before filing, as the Rules

require, United would have avoided the entire time and cost of defense of this action, which is barred based on the Release.

***Dismissal or Striking Plaintiff's Complaint and/or Answer to Counterclaims.*** Given Plaintiff's entire discrimination action against United is expressly barred by the Release and Plaintiff admits she pocketed more than $80,000.00 in exchange for her Release, dismissing or striking the offending Complaint and/or Answer would address the frivolous filing and deter similar future conduct.

***Requiring Payment of VSL Wages into Court's Registry to Proceed with Defenses Voiding the Release, or Striking Defenses.*** In the alternative, as a component of any sanction short of case-ending sanctions, any situation where Plaintiff is allowed to advance her spurious voiding-the-Release-she-entered-into argument—the Court should require her to deposit, at minimum, the approximately $80,000.00 she admitted to receiving from United. [Ex. 1, Pl.'s Depo. 160:19-161:2]. If Plaintiff refuses to deposit United's VSL money with the Court, Plaintiff's affirmative defenses attacking the Release as voidable should be stricken, and her VSL-related denials should be deemed admissions.

## IV. CONCLUSION

United's sanctions motion is not brought lightly. Plaintiff and Plaintiff counsel's actions and inactions related to the VSL, the Release, and the defenses

seeking to void the Release became sanctionable because a good faith inquiry by counsel could easily have discovered there was *neither* a factual nor legal basis for proceeding. Instead of confronting that reality, Plaintiff's counsel has doubled down on the original, unsupportable lawsuit by filing factually and legally frivolous denials and defenses to United's Counterclaims. The Court's powers, under Rule 11, Section 1927, and its inherent authority, exist to curb this type of practice. United is asking and hoping for the Court's assistance.

WHEREFORE, United respectfully requests the Court (1) grant this motion; (2) sanction Plaintiff's counsel and/or the Plaintiff for the frivolous filings and positions taken as proposed above, or as the Court deems just and proper; (3) award United its reasonable fees and costs for bringing the motion; and (4) grant such other and further relief as this Court deems just and proper.

**FED. R. CIV. P. 11 CERTIFICATE**

As required by Federal Rule of Civil Procedure 11, this motion was served upon Plaintiff's counsel, Belinda Noah, Esq., via email on July 8, 2024.

**LOCAL R. 3.01(g) CERTIFICATE**

On July 30, 2024, Counsel for Defendant conferred with counsel for Plaintiff via telephone regarding this Motion, before filing it with the Court. Plaintiff's counsel opposed the relief requested, and no agreement could be reached.

DATED this 30th day of July 2024.

Respectfully submitted,

JACKSON LEWIS P.C.
390 North Orange Avenue, Suite 1285
Orlando, Florida 32801
Telephone: (407) 246-8440
Facsimile: (407) 246-8441

By: */s/ Amanda A. Simpson*
Amanda A. Simpson
Florida Bar No. 0072817
amanda.simpson@jacksonlewis.com

Jan T. Williams
Florida Bar No. 92604
jan.williams@jacksonlewis.com

Attorneys for Defendant/Counter-Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of July, 2024, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: Belinda Noah, Esquire, Law Offices of Dr. Belinda Noah, 10144 Whisper Pointe Drive, Tampa, FL 33647.

*/s/ Amanda A. Simpson*
Amanda A. Simpson

4883-3863-9814, v. 4