**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| **SHAROLYN STANLEY,**<br><br>**Plaintiff/ Counter-Defendant,**<br><br>**vs.**<br><br>**UNITED AIRLINES, INC., a foreign profit corporation,**<br><br>**Defendant/ Counter-Plaintiff.** | **CASE NO. 6:23-cv-00090-CEM-DAB** |

**DEFENDANT/COUNTER-PLAINTIFF'S SUPPLEMENTAL MOTION TO DETERMINE REASONABLE ATTORNEYS' FEES AND COSTS AND INCORPORATED MEMORANDUM OF LAW**

Defendant/Counter-Plaintiff, United Airlines, Inc. ("United")—pursuant to this Court's Orders granting United summary judgment, sanctions, and entitlement to attorneys' fees and costs against Plaintiff/Counter Defendant, Sharolyn Stanley ("Stanley") and Plaintiff's counsel, Attorney Belinda Noah, Esq., for the entire action [Docs. 115 and 131], and ordering this Supplemental Motion under Local Rule 7.01(c) [Doc. 131]—moves for an award of its reasonable attorneys' fees and expenses.

## PRELIMINARY STATEMENT

United respectfully requests **$459,811.20** in attorneys' fees and expenses as contractual damages and sanctions against Stanley and her counsel for being compelled to defend itself against Stanley's frivolous lawsuit, as well as for prosecuting its Counterclaims, in light of the Waiver of Rights and Claims/Release from Liability ("Waiver and Release") entered into by Stanley when she agreed to United's Voluntary Separation Leave ("VSL") program. As described more fully herein, a *substantial* portion of United's fees are directly attributable to Stanley and her attorney unreasonably and vexatiously multiplying these proceedings. Thus, while the fees may be higher than this Court would normally see in a disability discrimination case, the additional amounts were the result of Stanley and her counsel's actions and stances in this litigation and thus, reasonably incurred.

United prevailed wholly and completely. The Court: granted United summary judgment on Stanley's Americans with Disabilities Act ("ADA") and the Florida Civil Rights Act ("FCRA") claims [Doc. 115]; granted Count I of United's Counterclaim for breach of the Waiver and Release as to liability, reserving on damages [*id.* n.6]; and granted United's Motion for Sanctions against both Stanley

and her attorney under "Rule 11, the Court's inherent authority, and § 1927,"[1] awarding "attorneys' fees and costs for the entire action. . ." [Doc. 131 p.16].

United herein presents evidence, from its lead counsel and law firm, Amanda Simpson, Esq. at Jackson Lewis, P.C. ("the Law Firm"), that the Law Firm spent 1153.30 hours at varying hourly rates, over the past two years on this case, as well as incurred $12,508.40 in costs. United's fee expert, Kevin Shaughnessy, opines the Court could award a somewhat reduced amount, based upon adjustments to the hourly rates or, in the alternative, award the full amount sought by United as damages for the breach of the Release. A copy of Attorney Simpson and Attorney Shaughnessy's affidavits are attached as **Exhibit 1** and **Exhibit 2**.

Stanley and Attorney Noah failed to engage in good faith conferrals as to the reasonableness of certain fees and expenses. Rather, they contend that United is not entitled to any fees or costs and if any fees are to be paid, it should be to Plaintiff. A copy of correspondence documenting the good faith conferral is attached as **Exhibit 3**. The issue of entitlement was previously decided by this Court. The only outstanding issue is whether the amount United seeks is reasonable, to which Stanley and Attorney Noah fail to articulate any objection.

---

[1] The sanctions against Stanley were only granted under FRCP 11 and the Court's inherent authority [Doc. 131 n.5], although Stanley was already liable for United's fees and costs as a result of the Counterclaim.

In short, the Court should award United the entire amount of its reasonable fees and expenses as damages and sanctions against Stanley and her attorney.

**RELEVANT PROCEDURAL BACKGROUND**

1. On January 18, 2023, Stanley filed the underlying action, alleging disability discrimination against United under the ADA and FCRA. [Doc. 1]. In her Complaint, Plaintiff admitted to: participating in United's VSL Program [Doc. 1 ¶17], getting paid for eighteen (18) months under the VSL, and "sign[ing] the Retirement leave [which] went into effect on March 1, 2021." [Doc. 1 ¶¶19, 71; *see also* Doc. 131, Sanctions Ord. pp.10-11].

2. Despite knowing she had waived her right to sue under the Waiver and Release, Stanley pressed on with the lawsuit. [Doc. 131, Sanctions Ord. p.11].

3. In March 2023, United filed its Motion to Dismiss the Complaint, attaching a copy of the Waiver and Release [Doc. 29, Ex. A]. The following year, in March 2024, the Court denied the Motion, finding the Waiver and Release was not specifically mentioned in the Complaint and thus, not appropriate for consideration at this stage. [Doc. 41]. Minimal fees were incurred between the time United filed its Motion to Dismiss and when the Court issued its Order.

4. On April 12, 2024, United filed its Answer and Counterclaims [Docs. 43, 44]. United pled, among other Counterclaims, that Stanley breached the Waiver and Release, which included a covenant not to sue, by filing the instant lawsuit

and United was damaged in having to incur the fees and costs to defend against the case and bring its Counterclaims. [Doc. 44 ¶¶20-24].

5. From this juncture forward, United was forced to incur significant attorneys' fees and costs, in large part due to Stanley and her counsel's positions in briefs, as well as their overall litigation tactics. For example:

- Stanley moved to dismiss United's Counterclaims and filed a (now-stricken[2]) proposed Reply that claimed she only "purportedly" signed the Waiver and Release. [Doc. 52, at 10].
- After Plaintiff's deposition, Plaintiff's Counsel filed an Answer to United's Counterclaims, frivolously denying many previously admitted factual allegations. [Doc. 79; *see also* Doc. 81 p. 10 as to details].
- Plaintiff's counsel filed an *untimely* 51-page, economic expert report [Doc. 92], with her summary judgment motion, only withdrawing it after United advised it would move to strike it. [Docs. 96, 98].

6. Discovery was also significant in this case, largely because United was forced to litigate *both* the less fact intensive applicability of the Waiver and Release, as well as the highly fact intensive underlying failure-to-accommodate claim. United served discovery and took the depositions of: Stanley; Stanley's physician, Hossam Naguib, MD; Stanley's registered nurse, Jessica McGuire, APRN; and Stanley's expert witness, James Miller, MD. [Doc. 84-10 p.2]. United also defended the depositions of its corporate representative and two other United employees. [Doc. 84-8 p.2].

---

[2] On May 28, 2024, the Court struck Stanley's proposed Reply based on her failure to first obtain leave under Local Rule 3.01(d). [Doc. 66].

7. On August 6, 2024, United filed its Motion for Summary Judgment as to both Stanley's claims and United's Counterclaims, relying on the same key arguments from its original Motion to Dismiss as to Stanley's Waiver and Release. [Doc. 84]. That same day, Stanley filed a competing Motion for Summary Judgment to which United filed a response. [Docs. 85 and 89].

8. Given the upcoming pre-trial deadlines, the parties then began preparing for trial during the pendency of their respective summary judgment motions. Here, United's fees and costs were substantially increased because Stanley and her attorney would not agree to narrow the issues in dispute, instead choosing to contest every conceivable point of fact or law.

9. On December 9, 2024, after grueling, lengthy negotiations, the Parties filed their Joint Pretrial Statement [Doc. 99], joint voir dire questions [Doc. 100], and Joint Proposed Jury Instructions and Verdict Forms [Doc. 101] with the Court. Notwithstanding United's counsel attempting, over multiple meetings, to streamline the issues for trial, based upon Stanley's prior factual admissions—including significant factual admissions within the Joint Pretrial Statement itself, e.g., that Stanley clicked "yes" and accepted the conditions of the VSL [*see* Doc. 99 pp.14-19]—Stanley insisted many of these admitted facts remained contested. [*Compare* Doc. 99 pp.14-19 *with* Doc. 99 pp.26-27]. Stanley also insisted on filing numerous contested, proposed jury instructions, as well as contested verdict

forms, despite the instructions and forms either being duplicative of other instructions, not following the Eleventh Circuit Pattern or Florida Standard Jury Instructions, and having no basis in fact or law. [*See* Doc. 101 pp. 92-103, 104-125].

10. Because of the many issues and continuing ambiguities about Plaintiff's (ever shifting) positions and anticipated trial presentation, United was forced to file six motions *in limine* and two motions to bifurcate:

a. Motion for an Order Barring the Testimony of United's CEO, Scott Kirby, under the Apex Doctrine or, Alternatively, Because the Probative Value of Mr. Kirby's Testimony is Substantially Outweighed by a Danger of Unfair Prejudice, Confusing the Jury, or Needlessly Presenting Cumulative Evidence [Doc. 102];
b. Motion to Prohibit Plaintiff from Referencing or Offering Evidence Regarding Certain Non-Economic Damages Related to Loss of Enjoyment of Life and Punitive Damages [Doc. 103];[3]
c. Motion to Prohibit Plaintiff from Referencing or Offering Evidence about Alleged Wage Damages where no Evidence of Adverse Action was Presented by Plaintiff and Plaintiff Failed to Allege or Prosecute a Constructive Discharge Claim [Doc. 104];
d. Motion to Exclude Plaintiff's Medical Expert's Testimony from Trial as her Medical Condition is Not Contested [Doc. 105];[4]
e. Motion to Bifurcate Punitive Damages [Doc. 106];
f. Motion to Bifurcate Constructive Discharge and Wage Damage Claims [Doc. 107];
g. Motion to Prohibit Plaintiff from Contesting Admitted Facts Relating to her Participation in United's VSL Program, Specifically her E-Signing of the Governing VSL Documents, including the Release Agreement [Doc. 108]; and

[3] Stanley's position was particularly egregious here. Despite a good faith conferral, Stanley refused to amend her pretrial disclosure demanding $10 Million in punitive damages in direct violation of the statutory caps under the ADA ($300,000) and FCRA ($100,000). [*See* Doc. 99 p.12].
[4] This is another egregious example as United stipulated to Plaintiff's disability and did not contest her expert's opinion that Stanley's "inhaled albuterol" medicine could not be taken through a mask. [See Docs. 99 pp. 9, 12 and 105-1].

h. Motion to Exclude Testimony and Evidence Related to any Purported Accommodation Request in Plaintiff's Capacity as a Passenger after her Election of the VSL [Doc. 109].

11. United's time and fees further increased by Stanley also filing five motions *in limine* [Docs. 110-114],[5] to which United began preparing responses that were ultimately not filed because the Court granted summary judgment. Some of Stanley's motions were legally unsound and incompatible with other positions she took. For example, Stanley wished to argue United was unresponsive to complaints, relying upon a written complaint she made about United's mask policy on United's Help Hub system (Plaintiff's proposed Ex. 10). But Stanley then moved *in limine* [Doc. 110] to prevent United from relying upon the investigative report (United proposed Ex. 36) that resulted from her complaint. This type of obvious, double standard necessitated opposition and increased costs.

12. On December 16, 2024, this Court granted United summary judgment on liability for its breach of contract Counterclaim, subject to determining the amount of damages. [Doc. 115 p.14, n.6]. The Court specifically found United was entitled to its attorneys' fees and costs as the "proper measure of damages here."

[5] Motions *in Limine* to: Exclude the [Investigation's] Statement of Findings from Evidence [Doc. 110]; Exclude Evidence and Testimony Concerning Subsequent Termination of Employment [Doc. 111]; Exclude Evidence and Testimony Regarding National Air Cargo Group, Inc.'s Statement of Position [Doc. 112]; Exclude Evidence and Testimony Related to the US Freedom Flyers Lawsuit [Doc. 113]; and Exclude the [Investigation] Letter Dated April 12, 2021 [Doc. 114].

[Doc. 115 p. 13, citing, with approval, *O'Neal v. Am. Shaman Franchise Sys., LLC,* 2024 U.S. Dist. LEXIS 155212, at *6 (M.D. Fla. Aug. 29, 2024)].

13. On December 19, 2024, Stanley moved for reconsideration of the summary judgment Order. [Doc. 119]. After United filed its Response opposing reconsideration [Doc. 123], Stanley sought leave to file a Reply [Doc. 124] and filed a Motion to Strike certain language from United's Response that she took issue with [Doc. 125], and United responded in opposition. [Doc. 127].

14. On February 5, 2025, the Court denied Stanley's Motion for Reconsideration, thereby reaffirming United's entitlement to its fees and costs, and denied Stanley's Motion to Strike. [Doc. 131].[6]

15. In the same Order, the Court also granted United's Motion for Sanctions against both Stanley and Attorney Noah under "Rule 11, the Court's inherent authority, and § 1927," finding the case "frivolous from the outset. . ," and awarding "attorneys' fees and costs for the entire action. . ." [Doc. 131 pp.15-16]. The Court found both Stanley and her counsel "engaged in <u>subjective and objective bad faith</u> throughout this litigation. . ." [Doc. 131 p.15].

[6] In yet another example of Stanley and her attorney increasing the costs, United was forced to file a Motion for Clarification [Doc. 129] to obtain guidance from the Court on the briefing schedule to determine attorneys' fees and costs, which Stanley opposed. [Doc. 130]. In granting United's Motion for Clarification, the Court noted the needless filing, writing that "it appears that Plaintiff's attorney did not actually read the relief requested by Defendant." [Doc. 131 p.14].

16. On February 7, 2025, Stanley moved the Court to reconsider both its award of sanctions and the denial of Stanley's Motion to Strike. [Doc. 133]. Later that day, Stanley filed another paper, styled a Notice of Supplemental Authority in Support of Motion for Reconsideration of February 5, 2025, Sanctions Order ("Supplemental Notice") [Doc. 135]—the Supplemental Notice included four exhibits, three of which were transparently documents created by Stanley's counsel. United filed its opposition to reconsideration, and moved to strike the Supplemental Notice, including the self-created "additional evidence." [Doc. 136]. As of this filing, the Court has not yet ruled on Stanley's motions for reconsideration or United's motion seeking to strike the Stanley's Supplemental Notice.

17. Because the Court previously ruled on entitlement, the only question is the amount of reasonable attorneys' fees and costs United incurred in defending against this action and bringing its Counterclaim as a direct result of Stanley's breach of the Release and the frivolous actions of Stanley and her counsel.

## LOCAL RULE 7.01(C) REQUIREMENTS: MEET-AND-CONFER, RESOLVED/UNRESOLVED ISSUES, DISPUTED RATES AND HOURS, AND DISPUTED EXPENSES

Pursuant to the Court's February 5, 2025, Order, United was directed to file a Local Rule 7.01(c) Supplemental Motion, jointly briefing both contractual damages and sanctions amounts, "as those overlap." [Doc. 131 p.17].

Meet-And-Confer Efforts: On February 28, 2025, the undersigned counsel served Stanley's attorney with a copy of all invoices outlining in detail the fees and expenses billed to United. The parties scheduled a March 11 conferral, at which Stanley's attorney requested a three-month extension of time of all applicable deadlines, through June 11, 2025, due to her husband's passing. United readily agreed and the Court granted Stanley's motion. [Doc. 138]. When United attempted to schedule the required conferral for May or June 2025, Stanley's attorney requested a second three-month extension, but also advised she would not confer, reiterating her opposition to the Court's entitlement Order.

Currently pending before the Court is Stanley's second motion seeking a three-month extension of time, through September 9, 2025 [Doc. 139], as well as United's response opposing the motion and, in the alternative, agreeing to a shorter extension. [Doc. 140].

Unresolved Issues, Disputed Rates and Hours: Despite United's numerous attempts to confer in good faith, Stanley's counsel refused to discuss the details of the fees and costs incurred, indicating United is not entitled to any amounts and if any fees are to be paid, it should be to Plaintiff. At no point did Stanley or her counsel make any specific objections to the rates, hours or non-taxable expenses. United files the following evidence in support of its reasonable attorneys' fee demand and this Supplemental Motion:

- Affidavit of lead counsel, Amanda A. Simpson, Esq. attached as **Ex. 1** which includes Exhibits A and B, invoices billed by the Firm.
- Affidavit of United's fee expert, Kevin Shaughnessy, Esq. attached as **Ex. 2**.

## MEMORANDUM OF LAW

### a. Legal standards.

The Court granted attorneys' fees and expenses on two grounds: (1) against Stanley, as a "proper measure of damages" for breaching the Waiver and Release [Doc. 115]; and (2) against Stanley and Attorney Noah, as a sanction, with recoverable fees and expenses spanning "the entire action. . ."—under Rule 11, Section 1927, and the Court's inherent authority. [Doc. 131 pp.15-16].

The lodestar method is the proper vehicle for determining the amount of reasonable fees for Stanley breaching the Waiver and Release. *O'Neal v. Am. Shaman Franchise Sys., LLC*, 2024 U.S. Dist. LEXIS 106161, at *8-10 (M.D. Fla. June 14, 2024) (applying lodestar in determining contractual damages for breach of release). While not required,[7] the lodestar method is also informative for determining sanctions, including based on the Court's inherent authority.[8]

[7] *McDonald v. Cooper Tire & Rubber Co.*, 2005 U.S. Dist. LEXIS 34137, at *7 n.3 (M.D. Fla. Dec. 9, 2005) (Eleventh Circuit has not required a lodestar analysis when an award of fees is a sanction, but bases its award of fees on a reasonableness standard and its own discretion and expertise.)

[8] *Odyssey Marine v. Unidentified Shipwrecked Vessel*, 2013 U.S. Dist. LEXIS 137634, at *25 (M.D. Fla. 2013) (applying lodestar calculation in determining court's inherent sanctions, including "for acting in bad faith and vexatiously"); *Sussman v. Salem, Saxon & Nielsen, P.A.*, 150 F.R.D. 209, 215

To determine the lodestar, one multiplies the hours "reasonably expended" by a "reasonable hourly rate."[9] *O'Neal*, 2024 U.S. Dist. LEXIS 106161, at *8-9. The Court may then adjust the lodestar amount. *Id.* at *9.

Initially, the party seeking fees has the burden of proving the reasonableness of its fees through evidence. *Id.* For the hours sought, the billing attorneys "must exercise billing judgment," meaning they should exclude "excessive, redundant, or otherwise unnecessary hours." *Id.* at *9-10. The opposing party then bears the burden of *specifically* identifying the hours or rates being opposed. *Est. of Townsend v. Shumaker*, 2025 U.S. Dist. LEXIS 4678, at *6 (M.D. Fla. Jan. 9, 2025). "[I]t is not the court's role to advocate for the fee opponent." *Id.* (citation omitted). Finally, requests for fees "should not result in a second major litigation," with the goal being "rough justice, not [] achiev[ing] auditing perfection." *Id.*

---

(M.D. Fla. 1993) (Rule 11 sanctions); *Am. Honda Motor v. Motorcycle Info. Network*, 2007 U.S. Dist. LEXIS 97949, at *33 (M.D. Fla. Sep. 17, 2007) (§ 1927 sanctions).

[9] This lodestar calculation presumptively includes all of the twelve *Johnson* factors:

> (1) time and labor required; (2) novelty and difficulty of the questions; (3) skill required to perform the legal services properly; (4) preclusion of other employment by the attorney due to acceptance of the case; (5) customary fee in the com-munity; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) amount involved and the results obtained; (9) experience, reputation, and ability of the attorney; (10) "undesirability" of the case; (11) nature and length of any professional relationship with the client; and (12) awards in similar cases.

*Shaffer v. Wilmington Sav. Fund Soc'y*, 2024 U.S. Dist. LEXIS 12299, at *4 (M.D. Fla. Jan. 24, 2024).

**b. <u>United's lodestar.</u>**

**i. The hourly rates for United are reasonable.**

United's Law Firm involved a range of attorneys and support staff at different stages of this two-year case—owing, in no small part, to jury trial preparation and responding to the torrent of unnecessary, frivolous filings from Stanley and Attorney Noah. However, most of the work was performed by the Law Firm's lead counsel and Office Managing Principal ("OMP") of the Orlando office, Amanda Simpson ($429/$480/$485 hourly), working together with a mid-level Associate, Vaughn Glinton ($298/$310/$344 hourly), and then, after Mr. Glinton's departure from the Law Firm, with a senior Associate, Jan Williams ($366/$391 hourly). [*See* Ex. 1].

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The actual rate charged to the client is also highly relevant in determining its reasonableness. *Towing v. One 66' 2019 Sabre Dirigo*, 2025 U.S. Dist. LEXIS 22719, at *5-6 (M.D. Fla. Feb. 7, 2025) ("What [the attorney] charges clients is powerful, and perhaps the best, evidence of his market rate; that is most likely to be what he is paid as determined by supply and demand.").

Here, United has offered record and testimonial evidence of both the Law Firm's charged rates, and that its rates are in line with the prevailing Orlando market for similar work. [Ex. 1 ¶¶6-9]. United's expert, Mr. Shaughnessy, recommends minor adjustments to the hourly rates for four attorneys and two support staff, based upon the local Orlando market, under his Rule 11 and Section 1927 analysis, but he does not make this recommendation if the Court awards fees based upon breach of the Release. [Ex. 2, *compare* Sec. B (pp.11-15) *with* Sec. C (pp.15-16)].

Frivolous actions and inactions by Stanley and her attorney also substantially complicated United's defense, requiring a higher-than-usual skill level from its attorneys. [Ex. 1 ¶10]. For example, rather than a reasonably straightforward ADA failure-to-accommodate case, Stanley's decision to file (and then persist with) an action barred by the Waiver and Release necessitated United considering the specific requirements of the VSL contract,[10] and then filing and prosecuting Counterclaims for breach of contract, undue enrichment, and promissory estoppel. [*See* Doc. 44, United's Am. Answer]. Additionally, Stanley's improper push past the discovery and summary judgment stages required United activating the Law Firm's trial team, which included attorney Donald English to

[10] For example, because United was preparing its Counterclaim for breach of the VSL, Attorney Charles Seeman was consulted to assist because of his expertise about ERISA plans and benefits because Stanley received benefits as part of her election for the VSL. [Ex. 1 ¶9].

assist with trial preparation and an additional associate, Charles DiNunzio, to keep up with the motion practice. [Ex. 1 ¶9].

Perhaps most egregiously, by Stanley and her attorney doggedly refusing to narrow the issues for trial, the overall costs of defense grew needlessly. Stanley and her counsel also continued to inject new issues into the case. A prominent example, highlighted in United's Reply in support of sanctions [Doc. 93 p.2], was Stanley arguing, post-summary judgment filings, that the Waiver and Release "was not signed" and "the Defendant has failed to produce a Release signed by the Plaintiff…" [Doc. 86, pp.2-3]. Put differently, United's attorneys needed creativity, as well as tactical and strategic positions that went beyond a run-of-the-mill employment case because of Stanley's shifting stances.

This Court has awarded similar, even higher hourly rates in the Orlando area in the past.[11] United's requested rates are reasonable, were actually paid or are in the process of being paid and follow applicable Orlando market rates.

---

[11] *See, e.g.*, *Invest v. Itf Auto Parts*, 2020 U.S. Dist. LEXIS 253794, at *8 (M.D. Fla. Jan. 21, 2020) ($500 reasonable for senior counsel in contract case); *Centennial Bank v. Vazquez*, 2021 U.S. Dist. LEXIS 198315, at *4 (M.D. Fla. Oct. 14, 2021) ($505 and $445-$350 reasonable in contract case); *Rudakas v. State Farm Mut. Auto. Ins. Co.*, 2020 U.S. Dist. LEXIS 58072, at *5 (M.D. Fla. Apr. 2, 2020) (finding $475 hourly reasonable for "relatively straightforward insurance coverage dispute" as Rule 16(f) sanction); *Cirrincione v. Davey Tree Expert Co.*, 2023 U.S. Dist. LEXIS 75513, at *3 (M.D. Fla. May 1, 2023) (listing cases, finding $405 for 12-year attorney and $310 for 6-year attorney reasonable); *Est. of Townsend*, 2025 U.S. Dist. LEXIS 4678, at *7-8 (report and recommendation) ($550.00 in 2022, $580.00 in 2023, and $635.00 in 2024, awarded to Tampa-based, 34-year commercial and bankruptcy litigator; partner rates of $410.00 in 2022, $430.00 in 2023, and $470.00 in 2024 for attorney practicing since 2006 reasonable; and paralegal rate of $210 reasonable).

**ii. United's demanded hours are reasonable, especially given the litigiousness of Stanley and her attorney.**

United expended a total of 1153.30 hours over about two years litigating this case—the hours spent were both reasonable and necessary. Beginning with Stanley's initial frivolous filing, and continuing through to the pre-trial stages, United had to contend with an onslaught of unjustified filings from Stanley and her counsel. *Weissman v. Williams*, 2018 U.S. Dist. LEXIS 229451, at *16 (M.D. Ga. 2018) ("[A] party cannot litigate tenaciously and then be heard to complain about the time necessarily spent by opposing party in response.")

Stanley filed her lawsuit despite: *agreeing* she received approximately $80,000.00 as part of the VSL program in exchange for *agreeing* to the Waiver and Release. Most of the motion practice, discovery, and trial preparation in this case was unnecessary. If Stanley had genuine concerns over the validity and enforceability of her Waiver and Release, she could have solely focused on this issue, greatly narrowing the case. Instead, she attempted to plead around the issue, thereby defeating United's Motion to Dismiss, and forcing the parties to litigate through summary judgment and into trial preparation.

Moreover, *the way* in which Stanley and her attorney litigated this case greatly contributed to the overall hours spent. Rather than strategically picking their battles, filing well-conceived motions, or seeking specific discovery directed

at discrete issues, Stanley and her counsel threw everything against the wall to see if anything would stick. They just filed papers and made scattershot arguments, often turning to new issues on a dime. But for Stanley and her counsel's litigation decisions, which were not based on fact or law, the time spent by United's attorneys on this case would have been substantially reduced.

Case law also supports the Law Firm's hours, based on the case posture of defending and prosecuting a case through the near eve of trial.[12]

Even a "regular" ADA case—without counterclaims or significant frivolous stances and pleadings—can take more than 500-600 hours through trial. *Williams v. Allen*, 2024 U.S. Dist. LEXIS 38811, at *27 (N.D. Ga. 2024) (finding 505.3 and 96 hours for senior lawyers, and 42.9 hours for junior lawyer reasonable for prosecuting ADA claim through trial); *Access 4 All, Inc. v. Atl. Hotel Condo. Ass'n*, 2006 U.S. Dist. LEXIS 109241, at *14 (S.D. Fla. 2006) (finding 425.15, 118.7 and 10.2 hours for three attorneys reasonable for taking ADA case through trial).

In sum, ample evidence supports the reasonableness of United's hours.

---

[12] *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 2018 U.S. Dist. LEXIS 67703, at *20 (M.D. Fla. 2018) (1,244.00, 478.60, 158.40, and 168.00 hours reasonable for three attorneys and one paralegal in three-year deceptive trade practices case, determined on appealed after summary judgment); *Universal Physician Servs., LLC v. Zotto*, 2021 U.S. Dist. LEXIS 129633, at *10 (M.D. Fla., 2021) (2,044.05 hours reasonable for multiple attorneys, support staff, where plaintiff prevailed in trade secret, unfair and deceptive trade practices case after four-day jury trial); *Wilmington Tr., N.A. v. Estate of Gonzalez*, 2017 U.S. Dist. LEXIS 226072, at *13 (S.D. Fla. 2017) (awarding $516,827.23 for attorneys' fees in breach of release action, excluding fees from damages trial).

**c. <u>United's lodestar and voluntarily reductions.</u>**

After a voluntary reduction,[13] United's lodestar based upon its reasonable hourly rates and hours expended is: $442,302.80. [Ex. 1 ¶5]. An attorney-by-attorney breakdown is included in Attorney Simpson's Affidavit. [*Id.*]. Additionally, United conservatively estimates another $5,000.00 will be expended for services going forward, including but not limited to preparing additional pleadings and arguing a possible hearing on fees and costs. [Ex. 1 ¶12; *see also* Ex. 2 p.9, fn 3]. Therefore, United seeks a total of **$447,302.80** in fees, plus additional costs addressed below. [Ex. 1 ¶13].

**d. <u>The Court need not adjust the lodestar, particularly where it awarded sanctions under its inherent authority.</u>**

No downward adjustments to United's lodestar are necessary—or just—here. The Court: denied Stanley's summary judgment motion, granted United's Counterclaim for breach of contract, and sanctioned both Stanley and Stanley's attorney under "Rule 11, the Court's inherent authority, and § 1927," awarding "attorneys' fees and costs *for the entire action*. . .," [Doc. 131 pp.15-16, emphasis added]. United prevailed in every sense of the word. *Tufaro v. Willie*, 756 F. Supp.

[13] United voluntarily reduces its fees by $1,008.80 to reflect its response to a non-party subpoena that was arguably more properly attributable to the other litigation Stanley had pending.

556, 562 (S.D. Fla. 1991) ("If the result was excellent, then the court should compensate for all hours reasonably expended.")

The Court's inherent authority to sanction is unlocked upon a finding of bad faith and serves the "dual purpose" of "vindicate[ing] judicial authority" and making "the prevailing party *whole*." *J.C. Penney Corp., Inc. v. Oxford Mall, LLC*, 100 F.4th 1340, 1346 (11th Cir. 2024) (emphasis added, quoting *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017)). The purpose of inherent authority-based sanctions is to "reimburse the victim," not punish the wrongdoers. *J.C. Penney Corp., Inc.*, 100 F. 4th at 1347.

To justly compensate United, the Court should not adjust the lodestar downward. The Court awarded United its reasonable fees and expenses both as United's contractual damages and under this Court's inherent authority. Under both standards, United is to be made whole. United necessarily expended the amounts detailed herein in defense and prosecution of its claims. In truth, given that United also paid Stanley more than $80,000.00, only to be rewarded with this costly suit, nothing short of its full fees and expenses would make it truly whole.

Additionally and in the alternative, only the full amount of its fees and expenses will serve as a deterrence, a central goal in courts imposing Rule 11 sanctions. *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) ("The purpose of Rule 11 sanctions is to reduce frivolous claims, defenses, or motions,

and to deter costly meritless maneuvers."). Stanley and her counsel may (incorrectly) argue a lesser-than-demanded fee award would meet this deterrence objective. This position would be wrong for at least two reasons. First, vis-a-vis Stanley, United prevailed on its contractual Counterclaim, and United is therefore entitled to more than deterrence, i.e. to be placed into its pre-breach status. [*See* Doc. 115, "The fees and costs. . .[are] the proper measure of damages here."]. Second, in ruling that "attorneys' fees and costs for the entire action [was the] appropriate sanction," this Court reasoned United's fees would not have been incurred "in the absence of the sanctioned conduct," or "except for the misconduct." [Doc. 131 p.16, citations omitted]. Thus, while the sanction must have a "financial nexus" to the misconduct, and it cannot exceed the fees expended,[14] this is the case here. Stanley filed a lawsuit that "should have never been filed" [Doc. 131 p.12], and all of United's incurred, reasonable fees and expenses are therefore recoverable.

**e. <u>United's expenses are also reasonable.</u>**

United should also be awarded all its expenses.[15] The Law Firm billed a total of **$12,508.40** to United for costs, including, but not limited to, process servers, court reporters, transcripts, and mediation fees. [*See* Ex. 1 ¶11 (Ex. B)].

---

[14] *Bussey-Morice v. Kennedy*, 2018 U.S. Dist. LEXIS 178137, at *42-43 (M.D. Fla. Jan. 12, 2018).

[15] *Am. Honda Motor Co.*, 2007 U.S. Dist. LEXIS 97949, at *35 (granting $60,834.31 in travel and expert witness expenses as part of § 1927 sanction).

## CONCLUSION

**WHEREFORE**, United respectfully requests the Court: (1) grant United's Supplemental Motion; (2) award it a reasonable amount of attorneys' fees in the amount of **$447,302.80**; (3) award United its reasonable expenses of **$12,508.40**; (4) enter final judgment that includes United's contractual damages and sanctions against Plaintiff and Plaintiff's Counsel; (5) reserve jurisdiction to allow United to seek additional or supplemental damages, including for any appeal; and (6) grant such other and further relief as this Court deems just and proper.

## LOCAL R. 3.01(g) CERTIFICATE

The Local Rule 7.01(c) section above outlines United's meet and confer efforts.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

DATED this 11th day of June 2025.

Respectfully submitted,

JACKSON LEWIS P.C.
390 North Orange Avenue, Suite 1285
Orlando, Florida 32801
Telephone: (407) 246-8440
Facsimile: (407) 246-8441

By: *_/s/ Amanda A. Simpson_*
Amanda A. Simpson
Florida Bar No. 0072817
amanda.simpson@jacksonlewis.com

Jan T. Williams
Florida Bar No. 92604
jan.williams@jacksonlewis.com

Attorneys for Defendant/Counter-Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of June, 2025, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: Belinda Noah, Esquire, Law Offices of Dr. Belinda Noah, 10144 Whisper Pointe Drive, Tampa, FL 33647.

*_/s/ Amanda A. Simpson_*
Amanda A. Simpson

4910-0361-1149